UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dena Lee Anderson, | No. 1:24-cv-01076-GSA |
| Plaintiff, | **OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSION OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| v. | |
| Commissioner of Social Security, | (ECF No. 14, 16) |
| Defendants. | |

## I.    Introduction

Plaintiff Dena Lee Anderson seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability benefits under Titles II and XVI the Social Security Act.[1]

## II.    Factual and Procedural Background

The ALJ held a hearing on July 15, 2024.  AR 817-839.  On July 22, 2024, the ALJ issued an unfavorable decision.  AR 797–810.  The Appeals Council denied review and this appeal followed.

## III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  Docs. 4, 5.

1

Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§

416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.   The ALJ's Decision**

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since from the alleged onset date to the date last insured.  AR 802.

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and degenerative joint disease of the lumbar spine and history of fracture of the left proximal humerus.  AR 802. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 803.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) but with the following additional limitations:

> frequent overhead reaching with the left (nondominant) upper extremity, frequent pushing and pulling with the feet, frequent climbing stairs and ramps, balancing, and kneeling, occasional climbing ladders and scaffolds, stooping, crouching, and crawling, and occasional exposure to heights and heavy machinery.  AR 803.

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a

3

mail carrier.  AR 808.  At step five, relying on the VE's testimony, the ALJ found that considering Plaintiff's age, education, work experience and RFC Plaintiff could perform the following jobs existing in significant numbers in the national economy: cleaner (DOT 323.687-014), which is light, unskilled work (SVP level 2) existing in significant numbers (177,000 jobs in the national economy); inspector (DOT 559.687- 074), which is light, unskilled work (SVP level 2) existing in significant numbers (6,000 jobs nationally); and, assembler (DOT 706.684-022), which is light, unskilled work (SVP level 2) existing in significant numbers (16,000 jobs nationally).  AR 809.

Accordingly, the ALJ concluded that Plaintiff was not disabled from December 18, 2014, the alleged onset date, through December 31, 2019, the date last insured.  AR 810.

### V.    Issues Presented

Plaintiff asserts four claims of error: 1- The ALJ did not address the combination of impairments in the RFC; 2- The ALJ failed to address Adult Listing 14.09, psoriatic arthritis; 3- The ALJ failed to consider Ms. Anderson's spinal limitations;  and 4- The ALJ did not provide hypotheticals which reflected the combination of impairments.

### A.    Combination of Impairments; RFC Generally

#### 1.    Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

#### 2.    Analysis

Plaintiff explains that pursuant to SSR 85-28, 20 CFR, 404.1523 and 416.923, the ALJ must consider the impact of the combination of a person's impairments on that person's ability to function, rather than consider separately the contribution of each impairment alone.  Id.

4

Similarly, Plaintiff emphasizes the regulatory requirement that the ALJ consider the combination of severe and non-severe impairments.  Plaintiff contends the ALJ failed to explain how she considered the combined effects.

As to this argument, these citations do not require the ALJ to <u>articulate</u> specifically how the combination of impairments are considered.[2]

Further, to the extent Plaintiff is suggesting that her non-severe impairment of psoriatic arthritis should have been considered in formulating the RFC, the ALJ did address Plaintiff's psoriatic arthritis, and it is clear why no corresponding restrictions were included in the RFC:

> Between and 2018 and 2019, the claimant complained to her treatment providers of gouty and psoriatic arthritis. On examination, the claimant's treatment providers observed psoriatic plaques at the arms, legs, trunk, and axilla, as well as tenderness and swelling at the left ankle, <u>but did not observe evidence of any significant complication(s) of the claimant's conditions, such as inflammation, stiffness, or swelling at the joints or issues with other body parts</u> (e.g., mouth, eyes, etc.). The claimant's treatment providers prescribed medication to treat the claimant's conditions. The claimant told her treatment providers <u>she did not always take her medication </u>as prescribed, but indicated the <u>medication was at least somewhat helpful</u>. Further, the claimant <u>did not pursue a referral to a rheumatologist</u> (Ex. 14F/26-34, 38-43, 51, 59-61, 70-72; Ex. 16F/23). Accordingly, in light of the lack of evidence of significant functional limitations attributable to the claimant's psoriatic arthritis, the undersigned finds this impairment was not severe through the date last insured.
>
> AR 803

These observations by the ALJ, which Plaintiff neither acknowledges nor disputes, cast significant doubt on an argument that Plaintiff's psoriatic arthritis, individually or in combination with her severe impairments, limited her ability to perform work activities.

---

[2] This differs from the regulations applicable to medical opinions.  Specifically, 20 C.F.R. § 404.1520c(c) provides that "We will <u>articulate how we considered</u> the medical opinions and prior administrative medical findings." (emphasis added).  By contrast, the regulations Plaintiff cites concerning combined effects of severe and non-severe impairments states only that "we will <u>consider </u>the combined effect of all your impairments. 20 CFR, 404.1523.  The requirement that the agency "Articulate how we considered" is different than "we will consider."  This suggest that the articulation requirement only applies to the ALJ's assessment of medical opinions, and not the combined effects of severe and non-severe impairments.  There is no dispute here that the ALJ did address severe and non-severe impairments.  There is no additional requirement to explain the combined effects, nor does Plaintiff explain how the ALJ could meet that burden, even if it existed.

**B.**    **Listing 14.09 (Psoriatic Arthritis)**

Plaintiff contends the ALJ did not address this listing.  However, in the discussion that ensues, Plaintiff addresses neither the listing's requirements nor the ALJ's findings about her psoriatic arthritis as quoted above (benign physical examinations, medication was helpful when taken as prescribed, was not always taken as prescribed, and she did not pursue a rheumatology referral).

Listing 14.09 has 4 alternative categories to meet the listing with each category containing multiple subsidiary categories, and each of those subsidiary categories containing their own required elements.  For example:

> **A.**    **Persistent inflammation or persistent deformity of**
> 1. One or more major peripheral joints in a lower extremity (see 14.00C8) and medical documentation of at least *one* of the following:
>     a. A documented medical need (see 14.00C6) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
>     b. An inability to use *one* upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 14.00C7), and a documented medical need (see 14.00C6) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
> 2. One or more major peripheral joints in each upper extremity (see 14.00C8) and medical documentation of an inability to use *both* upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 14.00C7).

And subcategory B, C, and D are equally dense.

To support the argument that Listing 14.09 applies, Plaintiff explains:

> Ms. Anderson has psoriatic arthritis and explained at the hearing "It's hard to hold things because my hands are hurting and it's hard to grip. It's kind of hard to explain, but yes, my, my (sic) hands don't function fully when they're hurting like that" (AR 54). Psoriatic arthritis is addressed under Adult Listing 14.09.

MSJ at 0.

To begin, it is worth noting that there is no contention that Plaintiff did not have psoriatic arthritis, nor that at times it could be difficult for Plaintiff to hold things.  However, to establish

6

an impairment of listing level severity, and the corresponding presumption of disability that goes along with it, much more is required.  This is clearly demonstrated in the required elements set forth above in listing 14.09.

On this point of psoriatic arthritis Plaintiff explains:

> Dr. Hisham Abukamleh, MD reports Ms. Anderson's condition emerged at age of 14, and was seen by multiple dermatologists was given her topical steroids. Dr. Lawrence Cosner, MD diagnoses severe psoriatic arthritis (AR 636,668). Dr. Hisham Abukamleh, notes the infections result in lesions in her toes which fill with pus. Ms. Anderson has been seen by a rheumatologist who started her on methotrexate and folic acid in addition to a DEXA scan ordered by the rheumatologist because of her history 3.2 of a fracture. (AR 1064). Dr. Hisham Abukamleh reports she has had difficulty walking. (AR 535, 636, 639, 713).

MSJ at 9.

However, this one-paragraph discussion does not actually demonstrate the point Plaintiff is attempting to assert as Dr. Lawrence Cosner did not diagnose "severe" psoriatic arthritis, rather the term "severe" was a characterization which appeared under the "HPI" (History of Present Illness) that contained subjective information that importantly was obtained from the patient.[3] AR 636.  Plaintiff also cites page 668 of the administrative record for the same proposition, severe psoriatic arthritis, but that page merely states "other psoriasis."

But importantly and notwithstanding, use of the word "severe" in isolation would not satisfy listing 14.09's exacting requirements.

As to Dr. Hisham Abukamleh's note that "the infections result in lesions in her toes which fill with pus," as quoted above, it is not at all clear how this note arguably fits into Plaintiff's claim(s).  Moreover, Plaintiff references "The infections" without explaining what that refers to. Plaintiff provides no citation as to where Dr. Abukamleh made such a statement and further provides no explanation as to how these alleged infections are applicable to listing 14.09.

As for the referral to rheumatology and the prescription for methotrexate, these establish little more than Plaintiff's condition was serious enough to result in her being seen by a specialist and prescribed medication, but it is not explained how this condition meets the requirements of

---

[3] See https://health.maryland.gov/bacc/Documents/soap.pdf (explaining that HPI is subjective)

listing 14.09.

As to Dr. Hisham Abukamleh's statement that she has had difficulty walking, this point is equally unpersuasive. Plaintiff cites AR 535, but that was a physical therapy visit with Dr. J'arshid Farajzadehfor for a shoulder (humeral head) fracture, shoulder impingement syndrome, and cervical spine strain, which appear to have little to do with walking.

Plaintiff also cites AR 636 and 639, which contain no reference to walking difficulty, although other surrounding records do reflect difficulty walking or legs giving out. These surrounding records however are part of Plaintiff's own subjective HPI (history of present illness) and importantly not findings observed by a provider.

Similarly, Plaintiff cites AR 713, which reflects under HPI the subjective contention of walking difficulty. But the same page notes discharge instructions of "You may walk and bear weight as tolerated."

In sum, the ALJ committed no error in declining to recite the requirements of Listing 14.09 (Psoriatic Arthritis) and articulate their applicability, or lack thereof, where nothing in the record other than the diagnoses suggest that Listing 14.09 was met.

### C.   Spinal Limitations

Plaintiff contends the ALJ failed to address her spinal limitations arguing that the ALJ disregarded Ms. Anderson's limitations at the Step Two finding. The ALJ explained as follows:

> Listing 1.15 contemplates a disorder of the skeletal spine resulting in compromise of a nerve root(s). In this case, the claimant's spinal impairment does not satisfy the requirements of Listing 1.15 because there is insufficient evidence of any of the following conditions: A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; and/or an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (AR 803).

AR 803.

8

Plaintiff asserts that "the record shows on going spinal damage with compression on her discs which require a cane. The record as discussed above shows objective evidence of spinal impingement." Plaintiff further asserts that "Dr. Moradian prescribes a cane for safety and not weight bearing in 2015 (AR 420). In Emergency she is noted as ambulating with a cane. At the hearing in 2024 Ms. Anderson states she continues to need her cane (AR 834)." MSJ at 11.

As quoted above, listing 1.15 requires the need for bilateral canes, not just one cane.

### D. Whether the ALJ's hypotheticals Reflected Her Combination of Impairments

Plaintiff explains that "Given the inadequate RFC the rest of the sequential steps are unsupported." However, this argument is entirely derivative of the argument concerning the deficiency of the RFC which, as discussed above, is not meritorious. Thus, this claim of error fails for the same reasons as stated above.

### E. Step Five

Here, Plaintiff contends that the ALJ did not meet the burden of proof at Step Five because the identified jobs in the National economy are in conflict with the RFC.

Despite Plaintiff's contention that the jobs provided "conflict with the RFC," Plaintiff is continuing to argue that the RFC is deficient. Specifically, Plaintiff is arguing that the identified step five jobs conflict with what the RFC should be, not with what the RFC is.

Plaintiff does not attempt to argue how the identified jobs at step five---cleaner, inspector assembler---conflict with the actual RFC for light work with postural and manipulative limitations. Nor does Plaintiff attempt to articulate a basis to question the VE's testimony that an individual with Plaintiff's limitations could perform those 3 jobs.

In sum, the argument does not demonstrate that the RFC deficient.

### F. Subjective Testimony

Plaintiff's final argument begins with a header labelled "The ALJ failed to provide clear and convincing reasons to discount Ms. Anderson's statements." MSJ at 12. The ensuing

9

discussion however does not address the Plaintiff's statements, rather Plaintiff again references listing 14.09, briefly quotes applicable caselaw, and ultimately questions whether the ALJ properly incorporated the opinion of Dr. Levine, whose opinion the ALJ found persuasive.

Here, Plaintiff quotes Dr. Levine's opinion:

I felt she should be able to sit six out of eight hours, but not longer than 45 minutes at a time without, as an example, standing and/or walking around a desk for a one to two-minute period, although could stay on task if the job allowed. And I felt she should be able to stand two out of eight hours, but not longer than 30 minutes at a time without the ability of sitting fer two to three minutes, and felt she could walk two out of eight hours, but not longer than 20 minutes at a time without the ability of sitting for two to three minutes (AR44).

Plaintiff explains that "The ALJ finds Medical Expert Orthopedist Dr. Levine persuasive. Dr. Levine as discussed above finds damage to Anderson's back, legs, and feet. He finds she is limited in her ability to ambulate. The ALJ did not resolve the conflict." MSJ at 15,

Importantly though, the ALJ did include those limitations in a hypothetical to the VE, who testified that such an individual could perform jobs existing in significant numbers in the national economy.  The applicable testimony follows:

Q: Okay. So if we have a hypothetical individual this ladies age, education and past work history, capable of light work, but she could only stand 30 minutes at a time, up to two hours. Walk 20 minutes of the time, up to two hours for a total of standing and walking of four hours. She can also sit 45 minutes at a time, up to six hours. No overhead reaching with the left upper extremity.

. . .

A: That is correct.

. . .

Q Okay. And would there be some jobs available within this

A: Yes. We're looking at jobs in the light category. And a sample of jobs would include office helper . . .

This testimony demonstrates that the  ALJ did  pose a hypothetical to the VE containing precisely the same limitations Dr. Levine opined and which spoke to whether Dr. Levine's

opinion would be work preclusive, namely: sit 6 of 8 hours and no longer than 45 consecutive minutes; stand 2 of 8 hours but no longer than 30 consecutive minutes; and walk 2 of 8 hours but no longer than 20 consecutive minutes.  Importantly, the VE testified that these limitations would not preclude a hypothetical claimant from performing jobs existing in significant numbers in the national economy.  Thus, any error in constructing the RFC would be harmless.

**VI.    Order**

The ALJ's decision that Plaintiff was not disabled is supported by substantial evidence and applicable law.

Accordingly, it is ordered that:

1.  Plaintiff's motion for summary judgment (Doc. 14) is **DENIED**.
2.  Defendant's cross motion (Doc. 16) is **GRANTED.**
3.  The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **February 19, 2026**              **/s/ Gary S. Austin**
                                                      UNITED STATES MAGISTRATE JUDGE

11